# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| MARK MATTLAGE, § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | | CASE NO. 6:19-CV-00409-ADA |
| § | | |
| DIVIDEND SOLAR FINANCE, LLC, § | | |
| *Defendant.* § | | |

## ORDER ADOPTING MAGISTRATE'S REPORT AND RECOMMENDATION

Before the Court is the Report and Recommendation of United States Magistrate Judge Jeffrey C. Manske. ECF No. 7. The report recommends that Defendant's Motion to Dismiss for Failure to State a Claim be granted in part and reversed in part by this Court. The action was referred to Judge Manske for findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. The Report and Recommendation was filed on October 2, 2019.

A party may file specific, written objections to the proposed findings and recommendations of the Magistrate Judge within fourteen days after being served with a copy of the report and recommendation, thereby securing *de novo* review by the district court. 28 U.S.C. § 636(b); FED. R. CIV. P. 72(b). A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation in a report and recommendation bars that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglas v. United Service Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Plaintiff timely filed Objections to the Report and Recommendation on October 15, 2019. ECF No. 8. Defendant subsequently filed a

Response to Plaintiff's Objections to the Report and Recommendation. ECF No. 9. In light of Plaintiff's objections, the Court has undertaken a *de novo* review of the case file in this cause.

Having carefully reviewed the Magistrate Judge's Report and Recommendation, Plaintiff's Objections to the Report and Recommendation, Defendant's Response to Plaintiff's Objections to the Report and Recommendation, and this case file, the Court does not dispute the Magistrate Judge's findings or his recommendation.

## I. FACTUAL BACKGROUND

On June 11, 2019, Mark Mattlage ("Plaintiff") brought suit in the 170th Judicial District Court of McLennan County, Texas. *See* Pl.'s Original Pet., ECF No. 1. DSF removed the action to this Court pursuant to 28 U.S.C. § 1332(a) on the basis of diversity jurisdiction. Notice of Removal, ECF No. 1. Plaintiff seeks recovery and declaratory relief related to a fixture filing DSF filed in the McLennan County real property records in order to secure DSF's interest in solar panels on Plaintiff's property. *See id*. Ex. A ¶¶ 6.01-6.10, 12.01. Plaintiff alleges DSF impermissibly filed a UCC Financing Statement in the Official Public Records of McLennan County, Texas, resulting in a cloud upon Plaintiff's title to the property. *Id.* ¶ 6.08. Plaintiff alleges that DSF induced Plaintiff by fraud and deception into a Solar Loan and Security Agreement. *Id.* ¶ 6.06. On the basis of these facts, Plaintiff brings actions for quiet title, slander to title, § 12.0002(b) of the *Texas Civil Practice & Remedies Code*, and the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). *Id.* ¶¶ 7.01-10.07. DSF filed its Notice of Removal to this Court on July 8, 2019. Notice of Removal, at 6.

In response to Plaintiff's claims, DSF filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). Dividend Solar Finance, LLC's Mot. to Dismiss (hereinafter "Mot. to Dismiss"), ECF No. 3. In DSF's Motion to Dismiss, DSF advanced two main arguments in

support of its Motion: (1) Plaintiff fails to state a claim for relief that is facially plausible and (2) Plaintiff fails to allege his DTPA claim with any semblance of particularity as required under Fed. R. Civ. P. 9(b). *Id.* On August 12, 2019, Plaintiff filed a response to DSF's Motion. Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss (hereinafter "Response"), ECF No. 5. On August 19, 2019, DSF filed a reply. Dividend Solar Finance, LLC's Reply in Support of Its Motion to Dismiss (hereinafter "Reply"), ECF No. 6.

On October 2, 2019, the Magistrate Judge issued a Report and Recommendation to this Court recommending Plaintiff's quiet title, slander of title, and Tex. Civ. P. & Rem. Code § 12.002(b) claims be dismissed. Report and Recommendation of the United States Magistrate Judge (hereinafter "R & R"), ECF No. 7 at 18. The Magistrate Judge also recommended this Court grant Plaintiff leave to amend his complaint as it related to the DTPA claim to meet the pleading standards under Fed. R. Civ. P. 9(b). *Id.* On October 15, 2019, Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation. Pl.'s Objections to Magistrate Judge's Report and Recommendation Regarding Def.'s Mot. to Dismiss (hereinafter "Pl.'s Objections), ECF No. 8. DSF filed responses to Plaintiff's objections on October 29, 2019. Dividend Solar Finance, LLC's Responses to Pl.'s Objections to the Magistrate Judge's Report and Recommendation Regarding Def.'s Mot. to Dismiss (hereinafter "Def.'s Responses to Pl.'s Objections"), ECF No. 9.

## II. LEGAL STANDARD

Upon motion or sua sponte, a court may dismiss an action that fails to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts all well-pleaded facts as true, viewing them in the light most favorable to the nonmovant. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191,

205 (5th Cir. 2007). To survive the motion to dismiss, a nonmovant must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court determines whether the plaintiff has stated both a legally cognizable and plausible claim; the court should not evaluate the plaintiff's likelihood of success. *Lone Star Fund V. (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). Based upon the assumption that all the allegations in the complaint are true, the factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

When the nonmovant pleads factual content that allows the court to reasonably infer that the movant is liable for the alleged misconduct, then the claim is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard, unlike the "probability requirement," requires more than a sheer possibility that a defendant acted unlawfully. *Id*. The pleading standard Rule 8(a)(2) announces does not require detailed factual allegations but demands greater specificity than an unadorned, "the-defendant-unlawfully-harmed-me accusation." FED. R. CIV. P. 8(a)(2); *Iqbal*, 556 U.S. at 678. A pleading offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Nor does a complaint comply with the standard if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. Evaluating the plausibility of a claim is a context specific process that requires a court to draw on its experience and common sense. *Iqbal*, 556 U.S. at 663–64.

A court considering a motion to dismiss should begin its analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. Next, the court should consider the factual allegations in the plaintiff's complaint to determine if they plausibly suggest an entitlement to relief. *Id*. at 681.

4

# III. ANALYSIS

As previously stated, the Magistrate Judge recommended Plaintiff's claims seeking quiet title, slander of title, and Tex. Civ. P. & Rem. Code § 12.002(b) be dismissed under Fed. R. Civ. P. 12(b)(6). The Magistrate Judge also recommended Plaintiff be granted leave of court to amend the DTPA claim in light of the pleading standards under Fed. R. Civ. Pro. 9(b). Plaintiff has filed nine objections to the Magistrate Judge's recommendation to dismiss the three property claims.[1] In light of the applicable legal standard, this Court does not dispute the Magistrate Judge's findings or recommendation. Each objection will be discussed in turn.

**A.     Plaintiff's Objections to the Magistrate Judge's Recommendation to Dismiss the Quiet Title, Slander of Title, and Tex. Civ. P. & Rem. Code § 12.002(b) Actions.**

**1.     The Report and Recommendation Does Not Require Plaintiff to Allege or Show an Actual Lien Exists.**

Plaintiff first objects to the Magistrate Judge's Report and Recommendation on the basis that Magistrate Judge incorrectly recasts the elements of Plaintiff's claims for quiet title, slander of title and a fraudulent lien under Tex. Civ. P. & Rem. Code Chapter 12. Pl's. Objections at 7. According to Plaintiff, the Report and Recommendation reached its conclusion by requiring Plaintiff to show a legally cognizable and plausible claim that DSF's fixture filing resulted in a lien on the real property rather than a cloud on Plaintiff's title. *Id.* at 7–8.

The elements Plaintiff must show in an action to quiet title are: (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable. *Vernon v. Perrien*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied). "'Slander of title' consists of a 'false and malicious statement made in disparagement of a person's title to property which causes special damages.'"

---

[1] While Plaintiff's Objections are only numbered 1–7, the Court notes Plaintiff has numbered two different objections as "3" and two more objections as "6."

*Allen-Pieroni v. Pieroni*, 535 S.W.3d 887 (quoting *Marrs & Smith P'ship v. D.K. Boyd Oil & Gas Co.,* 223 S.W.3d 1, 20 (Tex. App.—El Paso 2005, pet. denied) (*per curiam*). Finally, in order to recover under Tex. Civ. P. & Rem. Code, Plaintiff must show DSF made, presented, or used a document or other record with: (1) knowledge that the document or other record is a fraudulent lien or claim against real or personal property or an interest in real or personal property; (2) intent that the document or other record be given the same legal effect as a court record or document of a court, evidencing a valid lien or claim against real or personal property or an interest in real or personal property; and (3) intent to cause another person to suffer physical injury, financial injury or mental anguish or emotional distress. TEX. CIV. P. & REM. § 12.002(a).

While the sentence Plaintiff isolates within the Report and Recommendation is perhaps too narrow, the Court cannot agree with Plaintiff that the Report and Recommendation recasts the elements of the claims or Plaintiff's burden of proof. R & R at 10. The Report and Recommendation acknowledges Plaintiff's contention that a fixture filing could indicate a lien on the Plaintiff's real property. *See* R & R at 9. However, Plaintiff's contention that the fixture filing might have had such an effect is an incorrect conclusion of law, *not* a legally cognizable claim. The *Carmel* Court Plaintiff continually references determined a threshold issue in such cases is: What is the nature of the security interest established by the security agreement? *Carmel Fin. Corp. v. Castro*, 514 S.W.3d 291, 296 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Further, that Court held the UCC does not operate to create a security interest in real property that the underlying security agreement did not authorize. *Id.*

As the Magistrate Judge notes, DSF's fixture filing clearly states the parties' Security Agreement does not create an interest in Plaintiff's real property. R & R at 10. Consequently,

DSF's fixture filing is valid, and, as a matter of law, does not indicate a fixture lien potentially encumbers the real property. *See Carmel*, 414 S.W.3d at 296 (holding a UCC Financing Statement does not operate to create a security interest in real property that the underlying security agreement does not authorize). Thus, Plaintiff has not alleged adequate facts to satisfy any of Plaintiff's three real property claims.

> **2.  The Magistrate Judge Properly Read the Security Agreement and the UCC Financing Statement Together.**

Plaintiff next objects to the Magistrate Judge reading the Security Agreement between the parties in conjunction with the filed UCC Filing Statement. Pl.'s Objections at 8. According to Plaintiff, the parties stipulated in their Security Agreement that the solar panels would never become fixtures, and this fact makes the fixture filing a false claim against the Plaintiff's claim. *Id.* Plaintiff would seemingly have this Court only consider whether the Security Agreement supports the assertion that DSF invalidly filed the UCC Financing Statement, not whether the Security Agreement helps determine the scope of the claimed security interest. As DSF correctly notes, a party provides notice of a claimed security interest through a UCC Financing Statement, and security agreements help define the scope of this security interest. Def.'s Responses to Pl.'s Objections at 3–4.

A financing statement merely serves as notice to third parties that a debtor's property is *or may be* encumbered. *Crow-Southland Joint Venture No. 1 v. N. Fort Worth Bank*, 838 S.W.2d 720, 724 (Tex. App.—Dallas 1992, writ denied) (emphasis in original). Conversely, a security agreement defines the collateral so the debtor or a third party can identify the property the creditor may claim as security. *Id.* at 723–724. A third party, once put on notice by a financing statement, must make inquiry to discover the complete nature of any agreement between the debtor and creditor in question. *Id.* at 724.

"Any . . . instrument not void on its face that purports to convey any interest in or make any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner." *Best Inv. Co. v. Parkhill*, 429 S.W.2d 531, 534 (Tex. App.—Corpus Christi 1968, writ dism'd w.o.j.). However, when one files a suit seeking to remove a cloud from a title, a cloud must exist that equity will remove. *Thompson v. Locke*, 1 S.W. 112, 115 (Tex. 1886).

In this case, not only does the UCC Financing Statement notify a third party it ought to inquire about the complete nature of the Security Agreement between Plaintiff and DSF, but it also specifically states the Agreement does not create a security interest in the real property. Mot. to Dismiss Ex. B, at 2. The instruments in question specifically disclaim any charge upon the land of Plaintiff as a matter of law. Plaintiff may not couch incorrect legal conclusions regarding the effect of the UCC Financing Statement and the Security Agreement as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The simple fact that potential buyers choose not to proceed with the purchase of the property because DSF filed a proper UCC Financing Statement to put such third parties on notice of its security interest does not mean that a cloud exists on Plaintiff's title that equity will remove.

3. **The Magistrate Judge Did Not Improperly Give Conclusive Effect to One Sentence in the UCC Financing Statement Over Other Statements in the Filing.**

Plaintiff further contends the Magistrate Judge improperly gave conclusive effect to the sentence within the UCC Financing Statement stating the Security Agreement does not create a security interest in Plaintiff's real property. Pl.'s Objections at 8. Plaintiff argues the sentence creates an unresolved ambiguity concerning what the phrase "This Security Agreement" references. *Id.* Plaintiff also believes elections made by DSF throughout the Financing Statement

were improper if DSF did not intend to assert a fixtures lien against Plaintiff's property. *Id.* at 8–9.[2] The Court will briefly consider each of these arguments.

The Court does not agree with Plaintiff that the potential ambiguity or alleged falsity of the sentence in question should prove fatal to the Magistrate Judge's Report and Recommendation. Again, a financing statement merely serves as notice to third parties that a debtor's property is *or may be* encumbered. *Crow-Southland*, 838 S.W.2d at 724 (emphasis in original). Once put on notice, a third party must inquire to discover the complete nature of the underlying security agreement. *Id.* Thus, any ambiguity concerning what the sentence refers to would be resolved upon a third party's inquiry. This same reasoning applies to Plaintiff's contention that the sentence is obscured by its location within the Financing Statement.

Plaintiff also argues the sentence is a false statement on the basis that the sentence says the Agreement "does not create a security interest in the debtor's real property to be recorded in the land records" and DSF filed the Financing Statement with such records. Plaintiff's argument is unavailing because both the Financing Statement and the underlying Security Agreement make clear DSF at no time purported to have a security interest in the real property. Consequently, DSF recorded no such interest in the records, and the statement is not false.

The Court also cannot agree with Plaintiff that Boxes 13, 14, and 16 on the Financing Statement filed by DSF contradict "the sentence plucked out by the Magistrate Judge as fatal to Plaintiff's claims." Pl.'s Objections at 9. The boxes Plaintiff claims are contradictory to the sentence are, in fact, required if a creditor seeks to file a financing statement as a fixture filing. TEX. BUS. & COM. CODE ANN. § 9.502(b). As the Magistrate Judge properly determined,

---

[2]Plaintiff also argues DSF should not have filed the document in the deed records if DSF was not claiming a fixtures lien against the property. Pl.'s Objections at 9. The Court believes it is best served considering this objection along with Plaintiff's other objections regarding whether DSF filed the document in the proper office. *See infra* Part III.A.5.

precautionary fixture filings are permitted to protect the secured party in the event goods are determined to have become fixtures. *Id.* § 9.502 cmt. 6 *and* § 9.334 cmt. 3; R & R at 14. Such a filing, however, does not concede the goods are or will become fixtures. TEX. BUS. & COM. CODE ANN. § 9.502 cmt. 6 *and* § 9.334 cmt. 3. Despite the fixture filing, the Security Agreement would still control the character of the goods as it relates to the parties to the Agreement; parties can contract to determine the character of a good. *See Citizens' Nat'l. Bank of Abilene v. Elk Mfg. Co.*, 29 S.W.2d 1062, 1065 (Tex. Comm'n App. 1930, no writ). However, the parties cannot force this agreement upon a third-party purchaser who has no notice of the agreement. *Id.*

A precautionary fixture filing simply allows the secured party to maintain its security interest *in the potential fixture* in the event the debtor decides to sell the real property. If found otherwise, secured parties would be held hostage to the whims of the debtor. The debtor could simply relieve herself of her unpaid debt by selling the goods as a part of the real property. Furthermore, the secured party would have no opportunity to protect its interest because any subsequent purchaser could disclaim notice of the interest and would be in good faith. The alleged fact that prospective buyers do not wish to purchase a property because a secured party has registered its interest in a good that could potentially be deemed a fixture in the future does not mean Plaintiff has stated a legally cognizable claim for any of Plaintiff's real property claims. DSF's fixture filing clearly disclaims any interest in Plaintiff's real property, consistent with the underlying Security Agreement. Further, such a statement is not contradictory to the other statements DSF is required to include within its Financing Statement so that it can file the Statement as a fixture filing. Thus, the Magistrate Judge did not improperly give conclusive effect to the sentence in question.

### 4. The Magistrate Judge Did Not Fail to Recognize Express False Claims Within the Fixture Filing.

Plaintiff believes the Magistrate Judge failed to give proper legal significance to the contention that when DSF filed the UCC Financing Statement as a fixture filing, its action was tantamount to falsely claiming fixtures existed on the property in which DSF had a security interest. Pl.'s Objections at 10. According to Plaintiff, when DSF filed the Financing Statement as a fixture filing, it essentially asserted the goods are or are to become fixtures. *Id.*[3]

Quite plainly, the UCC permits fixture filings as a precautionary measure to protect the secured party in the event goods are determined to be fixtures. TEX. BUS. & COM. CODE ANN. § 9.502 cmt. 6 *and* § 9.334 cmt. 3. Despite Plaintiff's assertions to the contrary, a precautionary fixture filing does not falsely assert goods are or are to become fixtures. In fact, the UCC clearly states a fixture filing does not amount to a secured party conceding the goods are or will become fixtures. *Id.* The Court will not make such an inferential leap at Plaintiff's behest in direct contradiction to the UCC's directive. *See id* (stating courts may not infer from a fixture filing a secured party concedes goods are or will become fixture). Consequently, there are no express false claims within the fixture filing that the Magistrate Judge failed to recognize.

### 5. The Magistrate Judge Properly Determined DSF's Deed Record Filing Did Not Result in Implicit False Claims.

Plaintiff objects that the Magistrate Judge failed to give proper legal significance to Plaintiff's argument that DSF improperly filed the fixture filing in the deed records and not with the Secretary of State. Pl.'s Objections at 11. Plaintiff argues that the fact DSF filed the fixture filing in the McLennan County deed records strongly supports an inference that DFS falsely

---

[3] Plaintiff also argues the Magistrate Judge determined Plaintiff "admitted" the Financing Statement does not assert a false claim against the real property through Plaintiff's references to the Security Agreement. Pl.'s Objections at 10–11. The Court does not see any such determination. The Magistrate Judge appears to have referenced a reading of the Security Agreement only as it relates to Plaintiff's argument about where DSF should have filed the Financing Statement. Thus, the Court will consider this argument in relation to those objections. *See infra* Part III.A.5.

claimed it had an interest in fixtures or soon-to-become fixtures on Plaintiff's real property. *Id.* According to Plaintiff, the only time the filing of a UCC Financing Statement is allowed in the real property records is if the financing statement is filed as a fixture filing and the collateral is goods that are or are to become fixtures. *Id.* Plaintiff's arguments here, however, amount to little more than incorrect legal conclusions, not facts that can overcome a 12(b)(6) motion.

The UCC allows a secured party to file a financing statement to perfect a security interest in goods that are or are to become fixtures in one of two ways. TEX. BUS. & COM. CODE ANN. § 9.501(a). The party can file the financing statement in the deed records if filed as a fixture filing, or the party can file the financing statement with the Secretary of State's office when the financing statement is not a fixture filing. *Id.* In stating there are two ways in which a party "may" file a financing statement, the UCC's comments make it clear the secured party can select the method at its discretion. *Id.* § 9.501 cmt. 4.

As the Court previously noted, a secured party can file a precautionary fixture filing. TEX. BUS. & COM. CODE ANN. § 9.502 cmt. 6 *and* § 9.334 cmt. 3. Further, such a filing is permitted because it can be difficult to tell if goods are or are about to become fixtures. *See id.* Under the UCC, DSF could file the Financing Statement as a fixture filing out of precaution; therefore, it met the statutory qualifications to properly file the Financing Statement with the McLennan County deed records.

Plaintiff attempts to argue a third party who sees the Financing Statement in the McLennan County deed records would reasonably conclude DSF was asserting or potentially asserting a fixtures lien against Plaintiff's entire real property. Pl.'s Objections at 11. This argument, however, directly contradicts Texas case law. Admittedly, a financing statement serves as notice to third parties that a debtor's property is or may be encumbered. *Crow-*

*Southland*, 838 S.W.2d at 724. However, once put on notice, a third party must inquire to discover the complete nature of the underlying security agreement. *Id.* Had the third-party buyers in this case done so, depending on the scrupulousness of their inquiries, they may have learned DSF had a secured interest only in the solar panels on the property. The fact those buyers did not reach this conclusion does not mean Plaintiff has stated a plausible claim for relief in regard to any of the real property claims.

      **6.     The Magistrate Judge Did Not Need to Consider or Give Any Legal Effect to a Title Insurer Finding a Cloud on Plaintiff's Title.**

Plaintiff objects to the Magistrate Judge failure to give due credence to Plaintiff's allegation that the title work on two failed sales of portions of the property determined the UCC Financing Statement was a cloud on Plaintiff's title. Pl.'s Objections at 12. Plaintiff states Stewart Title Company had listed the UCC Financing Statement as an *exception to its proposed coverage* and required its termination before Stewart Title Company issued a title policy. Pl.'s Objections at 12 (emphasis added).

A court may not consider more than the pleadings when assessing the veracity of a 12(b)(6) claim. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The Court will not consider these alleged facts because they were not included in or attached to Plaintiff's petition. *See id.* Moreover, Plaintiff cannot contend Rule 12's pleading requirements have been met simply because the title company listed the UCC Financing Statement as an exception to its proposed coverage. Such a listing has no bearing on Texas law; it may simply make good business sense or minimize risk. The title company finding the Financing Statement creates a cloud on Plaintiff's title does not amount to plausible factual assertions, but a third-party's own legal determination made in the context of operating a business. Plaintiff pleads DSF refused to release its claim under the Financing Statement. Pl.'s Orig. Pet. ¶¶ 6.09–6.10. However, Plaintiff

could have also terminated the Financing Statement by paying DSF in full to satisfy a contract Plaintiff entered. Thus, even if the Court was willing to consider these facts, Plaintiff has not pleaded any facts that establish a cloud exists on Plaintiff's title that equity would remove or plausibly state claims for relief under any of the pleaded causes of action.

    **7.    There is No Implied Ability to Judicially Foreclose on Plaintiff's Property to Enforce a Fixture Lien.**

Plaintiff further objects to the Magistrate Judge's conclusion that a precautionary fixture filing preserves the priority of DSF's security interest against a subsequent purchaser of Plaintiff's property. Pl.'s Objections at 13. Plaintiff contends the Magistrate Judge did not appreciate the true nature of the cloud DSF's fixture filing created: that DSF is falsely asserting it has a proper fixtures lien, and with it, the right to foreclose on the real property. *Id.* at 14. However, the UCC and Texas case law demonstrates DSF has no such right as a matter of law. Thus, no cloud exists on Plaintiff's title that equity would remove.

Plaintiff first turns to the UCC, specifically § 9.604 to demonstrate DSF's fixture filing gives it the right to foreclose on the property. However, Plaintiff's contentions here suffer from selective reading of the statute. Section 9.604 of the UCC states:

    (a) If a security agreement covers both personal and real property, a secured party may proceed:

        (1) under this subchapter as to the personal property without prejudicing any rights with respect to the real property; or
        (2) as to both the personal property and the real property in accordance with the rights with respect to the real property, in which case the other provisions of this subchapter do not apply.

    (b) Subject to Subsection (c), if a security agreement covers goods that are or become fixtures, a secured party may proceed:

        (1) under this subchapter; or
        (2) in accordance with the rights with respect to real property, in which case the other provisions of this subchapter do not apply.

TEX. BUS. & COM. CODE ANN. § 9.604 (a)–(b). Looking at the statute as a whole, it is clear the secured party may only proceed as to real property *only in accordance to the secured party's rights and remedies with respect to the real property*. TEX. BUS. & COM. CODE ANN. § 9.604 cmt. 2 (emphasis added).

Plaintiff cites *In re Carr*, 17-00240, 2017 WL 6016215 (Bankr. D.D.C. Dec. 4, 2017) as evidence that a creditor can proceed under Article 9 or use the remedies available under real property law. Pl.'s Objections at 13. However, Plaintiff misconstrues the *Carr* Court's purpose for making this statement. In discussing Section 9.604(b), the court acknowledged that no clear answer existed concerning how to apply this section since it was last amended. *Id.*, at *2 n.2. The court did recognize, however, that another court had held a creditor may only use remedies relating to fixtures or must obtain a separate security interest in the real property to exercise its remedy under § 9.604. *Id.* This court was the court in *Carmel*. *Id.*; *Carmel*, 524 S.W.3d at 296–297. The *Carmel* Court held that Carmel could not foreclose on the property because Carmel "did not contract with the homeowner to create a security interest in real property in connection with the water treatment system." *Id.* at 296. Additionally, it determined that Section 9.604 did not operate independently to create a security interest in the real property that the security agreement did not authorize. *Id.*

Plaintiff incorrectly narrows the *Carmel* Court's holding. The court did not, as Plaintiff suggests, simply hold that Carmel could not foreclose on the real property because it did not have a valid fixture's lien entitling it to that remedy. Pl.'s Objections at 14 n.6. Rather, the court held that a creditor is only entitled to the rights and remedies applicable to the interests created in the underlying security agreement. *Carmel*, 524 S.W.3d at 296–297. Thus, if a security agreement purported to give a creditor some kind of interest in the real property, the creditor

would have a right to use judicial foreclosure as a remedy. However, DSF's underlying Security Agreement did not create such an interest, and thus, as a matter of law, does not create a cloud on Plaintiff's title that equity would remove or satisfy the elements of any pleaded cause of action.

Plaintiff further argues DSF's filing falsely gives notice it has a proper fixtures lien and a right to foreclose on the property. Pl.'s Objections at 14. The Court will once again state that a financing statement merely serves as notice to third parties that a debtor's property is or may be encumbered. *Crow-Southland*, 838 S.W.2d at 724. Once put on notice, a third party must inquire to discover the complete nature of the underlying security agreement. *Id.* Such an inquiry, however, does not amount a cloud on Plaintiff's title as a matter of law because the Security Agreement is not proof of any invalid charge upon the land of Plaintiff. The Financing Statement is valid, and both the Financing Statement and the Security Agreement clearly establish DSF retains no interest in Plaintiff's real property.

### 8. The Security Agreement Did Not Prohibit a Precautionary Filing.

Plaintiff next objects to the Magistrate Judge's conclusion that DSF could file its fixture filing in the deed records as a precautionary measure. Pl.'s Objections at 15. According to Plaintiff, DSF has foreclosed availing itself of this precaution by stipulating it would not consider the solar panels were fixtures. *Id.* Plaintiff argues this precautionary fixture filing results in DSF claiming a greater security interest. *Id.* Plaintiff concludes if DSF wished to preserve its rights in the secured property, it should have done so through a filing with the Secretary of State's office. *Id.* at 16.

Contrary to Plaintiff's position, DSF has not locked itself into a position that the solar panels are not and will never be fixtures even if Plaintiff sells the property. Texas law allows parties to determine whether the character of a good maintains its personal character or becomes

a fixture. *Citizens' Nat'l. Bank*, 29 S.W.2d at 1065. However, the parties cannot force this agreement upon a third-party purchaser who has no notice of the agreement. *Id.* As the Magistrate Judge notes, the UCC financing statement's very purpose is to provide notice that a debtor's property is or may be encumbered to parties outside of the security agreement. *Crow-Southland*, 838 S.W.2d at 724; R & R at 15. Thus, if a party could not file a precautionary fixture filing within the county property records, any third-party purchaser without notice of the encumbrance could disclaim liability by showing the collateral had become a fixture. R & R at 15. Such a precautionary fixture filing allows a creditor to provide notice to third parties making an inquiry in the real property records. Thus, a precautionary fixture filing allows DSF to maintain its security interest without being held hostage by Plaintiff's decision to sell the property before paying DSF in full. *Id.*

Additionally, despite the agreement that the parties would not consider the solar panels fixtures, the Security Agreement between the parties does not limit how DSF may protect its security interest. The Agreement reads in relevant part, "[l]ender, in its sole discretion, may file financing statements and/or other documents to evidence, perfect, protect or maintain its security interest." Mot. to Dismiss Ex. A at 4. Consequently, the Security Agreement does not foreclose DSF from availing itself of a precautionary fixture filing.

### 9. Plaintiff Did Not Properly Plead a Claim for Declaratory Relief.

Finally, Plaintiff alternatively asks the Court to entertain this action and allow it to go forward to provide declaratory relief stating the limits on DSF's rights as it pertains to Plaintiff's property. Pl.'s Objections at 16. Plaintiff would publish this declaratory judgment or publish it to prospective buyers to show there is no fixtures lien on the property arising out of the Security Agreement. *Id.* at 17.

Plaintiff's new request for declaratory relief is unavailing. When a declaratory judgment action is removed to federal court, that action is viewed as one brought under the Declaratory Judgment Act. *See Edionwe v. Bailey*, 860 F.3d 287, 294 n.2 (5th Cir. 2017). Critically, the Declaratory Judgment Act "does not create a substantive cause of action but, instead, is merely a procedural vehicle that allows a party to obtain an early adjudication of an actual controversy arising under substantive law." *Rodriguez v. Bank of Am. N.A.*, Civ. No. 4:16-CV-194, 2016 WL 4718177, at *7 (S.D. Tex. Aug. 8, 2016) (quotations omitted). When all the substantive, underlying claims have been dismissed, a plaintiff cannot maintain a claim for declaratory judgment. *Ayers v. Aurora Loan Servs., L.L.C.*, 787 F. Supp. 2d 451, 457 (E.D. Tex. 2011). Because all of Plaintiff's substantive claims concerning quiet title have been dismissed, Plaintiff cannot seek declaratory relief.

Contrary to Plaintiff's assertion, the lack of a declaratory judgment does not leave Plaintiff between a proverbial rock and hard place. For a final time, the Court will note that a financing statement merely serves as notice to third parties that a debtor's property is or may be encumbered. *Crow-Southland*, 838 S.W.2d at 724. Once put on notice, a third party must inquire to discover the complete nature of the underlying security agreement. *Id.* If Plaintiff wishes to provide prospective buyers with the Security Agreement up front as he would an abstract judgment, Plaintiff is not precluded from doing so. If Plaintiff wishes to pay DSF in full to terminate DSF's security interest in the solar panels, Plaintiff may do so. However, no cloud exists on Plaintiff's title that equity will remove. Plaintiff has not stated legally cognizable and plausible claims for relief, and Plaintiff's objections to the Magistrate Judge's Report and Recommendation are equally unavailing as a matter of law.

**B. Neither Party Objects to the Magistrate Judge's Recommendation That Defendant's Motion to Dismiss Plaintiff's DTPA Claim Be Denied.**

No party to this case has timely filed any objection to the portion of the Magistrate Judge's Report and Recommendation that recommends denying DSF's 12(b)(6) motion as it relates to Plaintiff's DTPA claim; consequently, the Court has reviewed this portion of the Magistrate Judge's Report and Recommendation for clear error. *See* Fed. R. Civ. P. 72 advisory committee's note ("When no timely objection is filed, the [district] court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). The Court, having reviewed the Magistrate Judge's findings and conclusions on this matter and finding no clear error, will accept and adopt this portion of the Report and Recommendation for the reasons stated therein.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Objections to the Report and Recommendation of the United States Magistrate Judge, (ECF No. 8), are **OVERRULED**. Therefore, the Report and Recommendation of the United States Magistrate Judge, (ECF No. 7), filed in this cause is **ACCEPTED AND ADOPTED** by the Court.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss, (ECF No. 3) is **GRANTED** in part; Plaintiff's claims under causes of action of quiet title, slander of title, and Tex. Civ. P. & Rem. Code § 12.002(b) are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss is **DENIED** in part; Plaintiff is hereby granted leave of court to amend his DTPA claims as required by Rule 9(b).

**SIGNED** this 2nd day of December 2019.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE